UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

In re:

YusefAbdul Salaam Suggs and                    Case No. 05-51313
Gloria Jean Bailey Suggs

          Debtors.

_____

ORDER AND OPINION
_____

This matter came on for hearing before the court on August 16, 2006 upon Mortgage

Electronic System, Inc.'s ("MERS") Motion for Relief from Stay filed on July 25, 2006. The

Chapter 7 Trustee is Bruce Magers, Wendell Wes Schollander III appeared for the Debtor, John

Meadows appeared for Tara Soph Tiari-El, and John Small appeared for movant MERS. Having

considered the matters set forth in the pleadings and the arguments of counsel, the court finds as

follows:

In early 2003, Tara Soph Tiari-El ("Tiari-El") attempted to purchase real property in

Mecklenburg County, North Carolina (the "Property") from Ingraham Homes. After Tiari-El was

unable to arrange financing, she sought the assistance of an intermediary, Debt 2 Wealth, to

arrange a transaction whereby Gloria Suggs would purchase and finance the Property and transfer it

to Tiari-El. Ingraham Homes sold the Property to Gloria Suggs on September 11, 2003 and

provided Suggs with a warranty deed.

Before she employed the services of Debt 2 Wealth, Tiari-El tendered $5,000 to Ingraham

Homes as an earnest money deposit. This money was retained by Ingraham Homes. On

1

September 10, 2003, Tiari-El provided $19,500 to her attorney, who was later disbarred for misappropriation of funds related to this and other real estate sales. In addition, Tiari-El's mother provided $3,000 to Gloria Suggs for facilitating the transaction, and $1,500 to Debt 2 Wealth as a transaction fee. Gloria Suggs did not provide any funds towards the purchase of the Property.

On September 11, 2003, Ingraham Homes sold the Property to Gloria Suggs. Gloria Suggs financed the Property through a note secured by a deed of trust from First National Bank in the amount of $303,900. Ingraham Homes was paid the purchase price of $303,900 for the Property in mid-September 2003. Gloria Suggs never had possession of the Property, and never conveyed any interest in the Property to Tiari-El. Tiari-El continues to occupy the Property, and the Debtors continue to own the Property. Tiari-El made some payments on the note directly to First National Bank, but stopped making payments when Suggs failed to convey the Property.

At the hearing, counsel for Tiari-El produced a copy of a lease agreement with option to purchase entered into by Suggs and Tiari-El. The lease provided that Tiari-El would pay $3,035.39 per month to First National Bank beginning on October 27, 2003. The lease also contained an option to purchase provision that stated that Tiari-El could opt to purchase the Property upon 10 days notice to Gloria Suggs. The agreement was signed by both parties and dated October 24, 2003. No evidence was presented to show whether such rent payments were ever made by Tiari-El to Suggs.

Shortly after closing, Gloria Suggs defaulted on the Note. After attempting to foreclose on the Property, MERS, as nominee for First National Bank, discovered that neither the Deed nor the Deed of Trust had been recorded. Accordingly, in March 2005, MERS commenced a lawsuit in Mecklenburg County, North Carolina seeking a declaratory judgment that Gloria Suggs was the

2

fee simple owner of the Property. Contemporaneously with the filing of the lawsuit, MERS filed a notice of lis pendens. Gloria Suggs, with her husband Yusef (the "Debtors"), filed this Chapter 7 proceeding in April 2005. Shortly thereafter, MERS ceased prosecution of its civil suit pending a resolution in this court.

The original deed from Ingraham Homes to Suggs was never recorded and could not be located during the pendency of MERS's state court proceeding. Therefore, Ingraham Homes issued a replacement deed conveying the Property to Gloria Suggs, which was recorded in January 2006, eight months after the Debtors' petition was filed.

The Debtors' Schedule A listed the value of the Property as $319,000 as of the Petition Date. MERS filed a proof of claim showing a total claim amount of $343,153.23 as of the Petition Date. Accordingly, there is no equity in the Property, and the Debtors have stated that they intend to surrender it.

MERS is seeking relief from the automatic stay so that it may continue prosecuting its pending action in state court, alleging that the Debtors have no interest in the Property and therefore the Property may not become part of Debtors' estate.

**<u>Discussion</u>**

Section 544(a)(3) of the Bankruptcy Code allows the Chapter 7 trustee to avoid any of the debtor's obligations or transfers that would be avoidable by a bona fide purchaser for value and include property subject to those obligations or transfers in Debtors' estate. 11 U.S.C. § 544(a). In most circuits, the trustee is given the status of an ideal hypothetical bona fide purchaser, with no actual or constructive notice of any record defect. *See, e.g., In re Sandy Ridge Oil Co.,* 807 F.2d 1332, 1334-35 (7th Cir. 1986). However, many circuits, including the Fourth, make a

distinction between actual and constructive notice of the trustee under §544(a). *In re Dunes Hotel Associates,* 194 B.R. 967, 983 (Bankr. D. S.C. 1995); *see also, e.g., McCannon v Marston,* 679 F.2d 13, 16 (3d Cir. 1982); *McEvoy v. Ron Watkins,* Inc., 105 B.R. 362, 365 (N.D. Tex. 1987); *In re Euro-Swiss Intern. Corp.,* 33 B.R. 872, 881 (Bankr. S.D.N.Y. 1983). For example, the Bankruptcy Court for the Northern District of West Virginia has held that:

> [A] trustee, as a bona fide purchaser under § 544(a), is subject to all the constructive notice provisions of the state in which the trustee is attempting to assert his § 544 power. If there is such constructive notice as would preclude a bona fide purchaser from prevailing under state law, then the trustee cannot prevail under § 544(a)(3).

*In reMorgan,* 96 B.R. 615, 618 (Bankr. N.D. W. Va. 1989). Other courts have agreed, holding that constructive notice will be a defense under § 544(a) if it is allowable under state law.

MERS argued in brief that the absence of the deed to the Debtors in the Property's chain of title gave the Trustee constructive notice of the pending dispute over the Property. It is true that under the law of some states, a purchaser for value takes with constructive notice of chain of title, and the absence of a particular deed in a chain of title constitutes constructive notice of a defect. However, North Carolina law is clear that an unrecorded conveyance does not provide record notice. *Massachusetts Bonding & Ins. Co. v. Knox,* S.E.2d 436, 440 (N.C. 1942) ("The law has appointed a place where mortgages must be registered in order for notice to purchasers and if there be no registry the purchaser is not held to constructive notice by any other means."). Therefore, the absence of the deed to Debtors gave the Trustee no constructive notice of a defect and did not defeat his status as a bona fide purchaser for value under §544(a)(3).

The lis pendens on the Property, however, did provide the Trustee with constructive notice of the defect in the Property's title. Under North Carolina law, a bona fide purchaser for value

must be able to show that he had no constructive notice by reason of lis pendens of pending litigation affecting title to the property. N.C. Gen. Stat. §§ 1-116, 47-18; *see also Stephenson v. Jones,* 68 N.C. App. 116, 124, 316 S.E.2d 626, 631 (N.C. App. 1984); *Hill v. Pinelawn Memorial Park, Inc.,* 304 N.C. 159, 165, 282 S.E.2d 779, 783 (N.C. 1981) ("While actual notice of another unrecorded conveyance does not preclude the status of innocent purchaser for value, actual notice of pending litigation affecting title to the property does preclude such status."). Here, the filed lis pendens gave the Trustee constructive notice of the pending litigation over the Property, and, under *Morgan,* he would be precluded from exercising his § 544(a)(3) strong-arm powers to include the Property in the estate.

Although the Trustee is not a bona fide purchaser under § 544(a)(3), he is a hypothetical lien creditor under § 544(a)(1). In its brief, MERS relies on North Carolina General Statute § 47-18 to argue that the Trustee and other creditors may not obtain a lien against the property since the deed was never recorded. North Carolina General Statute § 47-18 states that "no conveyance of land,. . . shall be valid to pass any property, as against creditors or purchasers for a valuable consideration, from the donor, bargainor, or lessor, but from the registration thereof within the county where the land lies." Functionally, this means that an unregistered deed conveys title from its date of delivery as against the grantor and all others except creditors of and purchasers for value from the *grantor, donor, or lessor,* not creditors of or purchasers from the *grantee. City of Durham v. Pollard,* 219 N.C. 750, 750, 14 S.E.2d 818, 819 (N.C. 1941) (emphasis added). Therefore, the fact that the deed from Ingraham Homes (grantor) to Gloria Suggs (grantee) was unrecorded does not prevent the trustee, as a hypothetical lien creditor of the grantee Gloria Suggs, from subjecting the Property to a hypothetical lien.

However, because MERS filed a notice of lis pendens pre-petition, MERS's claims have priority over the Trustee's claims as a hypothetical lien creditor. Under North Carolina law, lis pendens preserves the priority of a lien that arises after an order of attachment has been perfected by judgment and levy. *In re Medlin,* 229 B.R. 353, 358 (Bankr. E.D.N.C. 1998); *see also* N.C. Gen. Stat. § 1-118 (stating that a purchaser or encumbrancer receives constructive notice by a cross-indexing of a lis pendens). Therefore, a subsequent bona fide purchaser or lien creditor will take the property subject to a properly recorded notice of lis pendens. *Id.* (holding that a lis pendens filed eleven months before the debtor filed for bankruptcy entitled the creditor to priority as against subsequent lienors or bona fide purchasers); *cf. Cutter v. Cutter Realty Co.,* 265 N.C. 644, 144 S.E.2d 882 (1965). Accordingly, the pre-petition lis pendens filed by MERS preserves its priority; and, although the Trustee may obtain a lien on the property as a hypothetical lien creditor under § 544(a)( 1), his interest is subordinate to MERS 's lien.

Although the Trustee would theoretically be able to obtain a junior lien on the Property, there is no equity in the Property, so a junior lien on the Property would not yield any assets for the Chapter 7 estate. Furthermore, a judgment creditor's lien only attaches to equity in the Chapter 7 debtors' property, and liens are avoided and treated as unsecured to the extent that they exceed the amount of equity. *See, e.g., In re Mangold,* 244 B.R. 901 (Bankr. S.D. Ohio 2000). Inasmuch as there is no equity in the Property ';[upon which the Chapter 7 Trustee could execute a lien, MERS is entitled to relief from the automatic stay under 11 U.S.C. § 362(d) to pursue remedies in state court. Therefore, MERS's Motion for Relief from Stay is GRANTED.

SERVICE LIST

Yusef Abdul Salaam Suggs
Gloria Jean Bailey Suggs
3195 Kittering Lane
Winston-Salem, NC 27105

Wendell Wes Schollander, III
2000 First Street, Suite 308
Winston-Salem, NC 27104

Bruce Magers
245 Nanzetta Way
Lewisville, NC 27023

Robert E. Price, Jr.
1144 West Fourth Street
Winston-Salem, NC 27101

John A. Meadows
2596 Reynolda Road
Winston-Salem, NC 27106

Michael D. West
P. O. Box 1828
Greensboro, NC 27402

John H. Small
2000 Renaissance Plaza
P. O. Box 26000
Greensboro, NC 27420